# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE CHESAPEAKE ENERGY SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) | Case No.  5:11-cv-985-M<br><br>Relating to:<br>ALL ACTIONS |

———————————————————

| | | |
|---|---|---|
| DEBORAH G. MALLOW IRA SEP INVESTMENT PLAN, Individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) ) | Case No. 5:12-cv-436-M |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AUBREY K. MCCLENDON, RICHARD K. DAVIDSON, KATHLEEN M. EISBRENNER, V. BURNS HARGIS, FRANK KEATING, CHARLES T. MAXWELL, MERRILL A. MILLER, JR., DON L. NICKLES, and LOU SIMPSON, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) ) | |
| CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation, | ) ) ) ) ) | |
| Nominal Defendant. | ) ) ) | |

———————————————————

| | | |
|---|---|---|
| CHRISTOPHER SNYDER, Individually and derivatively on behalf of CHESAPEAKE ENERGY CORPORATION | ) ) ) ) ) | Case No. 5:12-cv-437-M |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AUBREY K. MCCLENDON, RICHARD | ) ) | |

[Caption continues on next page]

K. DAVIDSON, KATHLEEN M.    )
EISBRENNER, V. BURNS HARGIS,  )
FRANK KEATING, CHARLES T.    )
MAXWELL, MERRILL A. MILLER, JR., )
DON L. NICKLES, and LOU SIMPSON, )
                                       )
               Defendants,     )
                                       )
           and           )
                                       )
CHESAPEAKE ENERGY         )
CORPORATION, an Oklahoma     )
Corporation,                )
                                       )
           Nominal Defendant.   )
_____)
                                       )
DOLEZAL FAMILY LIMITED    )
PARTNERSHIP, Derivatively on Behalf of )
Nominal Defendant CHESAPEAKE   )
ENERGY CORP.,           )
                                     )    Case No. 5:12-cv-477-M
               Plaintiff,       )
                                     )
           v.            )
                                     )
AUBREY K. MCCLENDON, RICHARD )
K. DAVIDSON, KATHLEEN M.    )
EISBRENNER, V. BURNS HARGIS,  )
FRANK KEATING, CHARLES T.    )
MAXWELL, MERRILL A. MILLER, JR., )
DON L. NICKLES, and LOUIS     )
SIMPSON,               )
                                     )
               Defendants,     )
                                     )
           and           )
                                     )
CHESAPEAKE ENERGY CORP.,   )
                                     )
           Nominal Defendant.   )
_____)
                                     )
BRIAN F. LEONARD, Individually and  )
derivatively on behalf of CHESAPEAKE )
ENERGY CORPORATION,     )
                                     )
               Plaintiff,      )
                                   )    Case No. 5:12-cv-479-M
           v.            )
                                     )

[Caption continues on next page]

AUBREY K. MCCLENDON, RICHARD     )
K. DAVIDSON, KATHLEEN M.          )
EISBRENNER, V. BURNS HARGIS,      )
FRANK KEATING, CHARLES T.         )
MAXWELL, MERRILL A. MILLER, JR.,  )
DON L. NICKLES, and LOUIS         )
SIMPSON,                          )
                                  )
                   Defendants,    )
                                  )
         and                      )
                                  )
CHESAPEAKE ENERGY                 )
CORPORATION, an Oklahoma          )
Corporation,                      )
                                  )
         Nominal Defendant.       )
_____)

JACOB SHOCHAT, Derivatively and on )
Behalf of CHESAPEAKE ENERGY        )      Case No. 5:12-cv-488-M
CORPORATION,                       )
                                   )
                   Plaintiff,      )
                                   )
         v.                        )
                                   )
AUBREY K. MCCLENDON, RICHARD      )
K. DAVIDSON, KATHLEEN M.           )
EISBRENNER, V. BURNS HARGIS,       )
FRANK KEATING, CHARLES T.          )
MAXWELL, MERRILL A. MILLER, JR.,   )
DON L. NICKLES, and LOUIS A.       )
SIMPSON,                           )
                                   )
                   Defendants,     )
                                   )
         and                       )
                                   )
CHESAPEAKE ENERGY                  )
CORPORATION,                       )
                                   )
         Nominal Defendant.        )
_____)

[Caption continues on next page]

| | |
|---|---|
| THE DAVID A. KROLL, INC. EMPLOYEES' PROFIT-SHARING PLAN AND TRUST, derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | Case No. 5:12-cv-493-M |
| Plaintiff, | |
| v. | |
| AUBREY K. MCCLENDON, RICHARD K. DAVIDSON, V. BURNS HARGIS, FRANK A. KEATING, BREENE M. KERR, CHARLES T. MAXWELL, DON L. NICKLES, FREDERICK B. WHITTEMORE, MARCUS C. ROWLAND, MICHAEL A. JOHNSON, LOUIS A. SIMPSON, KATHLEEN M. EISBRENNER, and MERRILL A. MILLER, JR., | |
| Defendants, | |
| and | |
| CHESAPEAKE ENERGY CORPORATION, | |
| Nominal Defendant. | |

| | |
|---|---|
| STEPHEN ROBACZYNSKI, Derivatively on Behalf of Nominal Defendant CHESAPEAKE ENERGY CORPORATION, | Case No. 5:12-cv-501-M |
| Plaintiff, | |
| v. | |
| AUBREY K. MCCLENDON, MERRILL A. MILLER, JR., DON NICKLES, CHARLES T. MAXWELL, FRANK KEATING, RICHARD K. DAVIDSON, | |

[Caption continues on next page]

V. BURNS HARGIS, KATHLEEN M.          )
EISBRENNER, LOUIS A. SIMPSON,         )
BREENE M. KERR, and FREDERICK B.      )
WHITTEMORE,                           )
                                      )
                    Defendants,       )
                                      )
              and                     )
                                      )
CHESAPEAKE ENERGY                     )
CORPORATION, an Oklahoma              )
Corporation,                          )
                                      )
              Nominal Defendant.      )
_____      )
                                      )
NORMAN SPIEGEL, Derivatively on       )
Behalf of Nominal Defendant           )     Case No. 5:12-cv-502-M
CHESAPEAKE ENERGY                     )
CORPORTION,                           )
                                      )
                    Plaintiff,        )
                                      )
              v.                      )
                                      )
AUBREY K. MCCLENDON, RICHARD          )
K. DAVIDSON, KATHLEEN M.              )
EISBRENNER, V. BURNS HARGIS,          )
FRANK KEATING, CHARLES T.             )
MAXWELL, MERRILL A. MILLER, JR.,      )
DON NICKLES, and LOU SIMPSON,         )
                                      )
                    Defendants,       )
                                      )
              and                     )
                                      )
CHESAPEAKE ENERGY                     )
CORPORATION,                          )
                                      )
              Nominal Defendant.      )
_____      )
                                      )
HOWARD ROSENGARTEN,                   )
Derivatively on Behalf of CHESAPEAKE  )
ENERGY CORPORATION,                   )
                                      )     Case No. 5:12-cv-505-M
                    Plaintiff,        )
                                      )
              v.                      )

[Caption continues on next page]

AUBREY K. MCCLENDON, RICHARD )
K. DAVIDSON, KATHLEEN M. )
EISBRENNER, V. BURNS HARGIS, )
FRANK KEATING, CHARLES T. )
MAXWELL, MERRILL A. MILLER, JR., )
DON NICKLES, and LOU SIMPSON, )
)
                    Defendants, )
)
       and )
)
CHESAPEAKE ENERGY )
CORPORATION, )
)
          Nominal Defendant. )
)
)
)
)
_____ )
)
ARTHUR ALBERTS, Individually and )
derivatively on Behalf of CHESAPEAKE )    Case No. 5:12-cv-545-M
ENERGY CORPORATION, )
)
                  Plaintiff, )
)
       v. )
)
AUBREY K. MCCLENDON, RICHARD )
K. DAVIDSON, KATHLEEN M. )
EISBRENNER, V. BURNS HARGIS, )
FRANK KEATING, CHARLES T. )
MAXWELL, MERRILL A. MILLER, JR., )
DON L. NICKLES, and LOU SIMPSON, )
)
                  Defendants, )
)
       and )
)
CHESAPEAKE ENERGY )
CORPORATION, an Oklahoma )
Corporation, )
)
         Nominal Defendant. )
_____ )

[Caption continues on next page]

|  |  |
|---|---|
| JOEL GERBER, Derivatively on Behalf of CHESAPEAKE ENERGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AUBREY K. MCCLENDON, RICHARD K. DAVIDSON, KATHLEEN M. EISBRENNER, V. BURNS HARGIS, FRANK KEATING, CHARLES T. MAXWELL, MERRILL A. "PETE" MILLER, JR., DON L. NICKLES, LOU SIMPSON, BREENE M. KERR and FREDERICK B. WHITTEMORE,<br><br>Defendants,<br><br>and<br><br>CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation,<br><br>Nominal Defendant. | Case No. 5:12-cv-584-D |

**PLAINTIFFS ARNOLD AND CLEM'S CONSOLIDATED RESPONSE IN OPPOSITION TO MOTIONS AND CROSS MOTIONS TO <u>CONSOLIDATE AND APPOINT LEAD</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................ii

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

      A.    Plaintiffs Arnold and Clem's Original Actions .............................................. 4

      B.    New Allegations Come to Light That Support and Add More Teeth
            to Original Plaintiffs' 2008 Claims................................................................7

      C.    Several 2012 Actions Are Filed .................................................................... 9

III.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................... 11

IV.   THIS COURT SHOULD REAFFIRM ITS APPOINTMENT OF
       ROBBINS UMEDA AND HOLZER AS CO-LEAD COUNSEL ....................... 16

      A.    Original Plaintiffs Have By Far Conducted the Most Thorough
            Investigation as Reflected in Their Unrivaled Complaint........................... 18

      B.    Co-Lead Counsel Have Substantial Expertise in Litigating
            Shareholder Derivative Actions .................................................................. 20

      C.    Co-Lead Counsel Is in the Best Position to Effectively and
            Efficiently Lead the Litigation ................................................................... 25

V.    CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beam v. Stewart*,
   833 A.2d 961 (Del. Ch. 2003) ............................................................................... 23

*Blagg v. Line*, 09-CV-0703-CVE-FHM,
   2012 WL 90439 (N.D. Okla. Jan. 11, 2012) ......................................................... 11

*In re Ambac Fin. Group, Inc. Derivative Litig.*,
   257 F.R.D. 390 (S.D.N.Y. 2009) ........................................................................... 17

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................... 17

*In re Green Mountain Coffee Roasters, Inc., Derivative Litig.*,
   No. 2:10-cv-233, 2012 WL 1493823 (D. Vt. Apr. 27, 2012) .............. 11, 12, 13, 16

*In re Jones Soda Co. Secs. Litig.*,
   No. C07-1366RSL, 2008 WL 418002 (W.D. Wash. Feb. 12, 2008) ..................... 17

*Moradi v. Adelson*,
   No. 11-CV-490-GMN-RJJ, 2011 WL 5025155 (D. Nev. Oct. 20, 2011).............. 16

*Resnik v. Woertz*,
   774 F. Supp. 2d 614 (D. Del. 2011) ...................................................................... 16

*Skirvin v. Mesta*,
   141 F.2d 668, 672 (10th Cir. 1944) ....................................................................... 11

## OTHER AUTHORITIES

Fed. R. Civ. P.
   42(a) ....................................................................................................................... 11

Plaintiffs M. Lee Arnold ("Arnold") and James Clem ("Clem," and collectively, "Original Plaintiffs"), respectfully file this consolidated response to various motions to consolidate and appoint leadership.  Original Plaintiffs further request that this Court deny the various motions to consolidate and appoint lead counsel in the above-captioned related derivative actions (and any subsequent related derivative actions) filed in this Court on behalf of Chesapeake Energy Corporation ("Chesapeake" or the Company") and consolidate these actions pursuant to the previous Order this Court issued on December 23, 2011.

## I.    INTRODUCTION

Little more than a month ago, Original Plaintiffs were virtually alone in their mission to hold Chesapeake's Board of Directors ("Board") accountable for the actionable and lavish bailout package they awarded to Chesapeake's Founder, CEO, and now Ex-Chairman Aubrey K. McClendon ("McClendon") after he suffered huge personal financial losses while using his Chesapeake stock as collateral.  No other shareholders joined Original Plaintiffs in opposing the substantively and procedurally flawed settlement in state court designed to provide nominal benefit to Chesapeake, big fees to the settling plaintiffs' counsel, and no transparency to shareholders.  Suddenly, Original Plaintiffs are joined by an army of other shareholders alleging claims that follow the same pattern of McClendon engaging in reckless transactions for his own personal gain to the potential detriment of the Company, while the Board again looked the other way or facilitated the dangerous practices – at the same time keeping shareholders in the dark.

Most of these new shareholder plaintiffs seem engaged in a race to the bottom to the detriment of Chesapeake.  They rushed to file bare-boned complaints while critical news continued to break.  They rushed to file motions to take lead of the litigation – with at least one such motion being filed by counsel before his client's complaint.  Some have scrambled to file ill-conceived motions that are making an unnecessary mess of this litigation and wasting the resources of the Company and the Court.  Consolidation of these new actions not only is necessary, but urgently needed, to bring order to litigation that now seems to be spiraling out of control.

To ensure the efficient and effective management of the derivative litigation, Original Plaintiffs believe that the Court should consolidate the new actions pursuant to the Court's prior consolidation order.  Original Plaintiffs initially filed separate related shareholder derivative actions in September 2011 relating to the egregious compensation package the Board awarded to McClendon in response to his personal financial meltdown in 2008.  On December 23, 2011, this Court entered an Order consolidating Original Plaintiffs' actions ("Consolidated Action") and appointing Robbins Umeda LLP ("Robbins Umeda") and Holzer, Holzer & Fistel LLP ("Holzer" and collectively with Robbins Umeda "Co-Lead Counsel") as Co-Lead Counsel (the "December 23 Order") [Dkt. No. 39].   Since filing their actions, Co-Lead Counsel and Plaintiffs have aggressively pursued justice for Chesapeake and its shareholders, moving with speed as needed to protect the Company's rights, but also with precision reflecting Co-Lead Counsel's expertise and sound judgment.

Original Plaintiffs and their counsel continue to demonstrate their leadership in the best interests of Chesapeake.  On the morning of April 18, 2012, a Reuters exposé revealed that McClendon had taken personal loans estimated at $1.1 billion from lenders, at least one of which received preferred shares of Chesapeake in separate financing transactions.  While this triggered the proverbial "race to the courthouse," Co-Lead Counsel (upon consultation with Original Plaintiffs) began a meticulous and ongoing investigation into the new allegations first exposed by Reuters and devoted substantial time and resources to prepare a comprehensive proposed Amended Complaint (the "Amended Complaint").  The Amended Complaint not only reflects Co-Lead Counsel's extensive investigation, but also their detailed, original analysis that is unmatched in any complaint filed with this Court by a Chesapeake shareholder.  Nothing would be gained by disrupting the present leadership structure.

Consolidation of the new derivative actions with Original Plaintiffs' action would also help ensure consistent results and realize unique synergies.  The new actions and the original action involve substantially similar factual allegations, causes of action, and defendants.  When considered together, the old and new allegations present a more full and complete picture of a self-serving McClendon and a Board that caters to his extravagant financial needs and with disregard for the conflicts they present in violation of their duties to the Company and its shareholders.  Indeed, nearly every new shareholder plaintiff alleges facts relating to McClendon's 2008 bailout to bolster their new claims.  Moreover, due to the factual and legal overlap between the old claims and

the new claims, there could be an overlap in pleading, discovery, motion and trial practice, should it become possible to litigate the old and new claims together.

For these and the reasons set forth below, Original Plaintiffs request that the Court deny the pending motions for consolidation and leadership and consolidate the recently-filed derivative actions pursuant to the Court's December 23 Order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs Arnold and Clem's Original Actions

Defendant McClendon has served as the company's Chief Executive Officer ("CEO") and Chairman of the Board (until recently) since he co-founded Chesapeake in 1989.  ¶2.[1]  Defendant McClendon has demonstrated himself to be an executive looking out for his own self-interests rather than for the interests of Chesapeake and its shareholders, and recently it seems every day brings new revelations about the depth of his misconduct.

In 2008, Chesapeake performed abysmally, with stock falling from $74 per share in July to less than $10 per share by December.  ¶78.  As Chesapeake's stock plummeted, defendant McClendon, the largest shareholder of the Company, faced margin calls forcing him to sell 94% of his Chesapeake stock for proceeds of over $569 million.  ¶79.  After this forced sale, Chesapeake's Board approved a compensation

---

[1] All "¶_" and "¶¶_" references herein are to Original Plaintiffs' Proposed Amended Shareholder Derivative Complaint for Breach of Fiduciary Duties, Waste of Corporate Assets, Unjust Enrichment, and Violations of the Securities and Exchange Act of 1934 ("Amended Complaint"), attached as Exhibit 1 to Original Plaintiffs' Motion to Lift Stay, filed May 3, 2012 [Dkt. No. 44-1].

package for defendant McClendon designed to bail him out of his financial predicaments, providing him with a $75 million "incentive award" to help him cover his costs associated with participating in the Founder Well Participation Program ("FWPP").  ¶84.

After waiting months (or years) for the Board to meaningfully respond to demands to investigate and remedy misconduct relating to defendant McClendon's 2008 compensation package, Original Plaintiffs separately filed complaints in September 2011.[2]  Original Plaintiffs brought these actions derivatively on behalf of the Company in an attempt to pursue the best course of action for the Company and recover for the breaches of duties against it relating to the compensation package.  Original Plaintiffs' actions were consolidated by the December 23 Order, which also appoint Co-Lead Counsel as such [Dkt. No. 39].

Shortly after filing their complaints, Original Plaintiffs were informed by Defendants that the allegations contained in the Consolidated Action were the subject of a settlement reached between shareholders who brought suit in the District Court of Oklahoma County, Oklahoma ("State Court") alleging the Board breached its duties to shareholders in connection with McClendon's 2008 compensation ("Proposed Settlement").[3]  ¶135.  Immediately, Co-Lead Counsel launched an investigation into the

---

[2] The first action commenced on September 6, 2011, when Plaintiff Arnold filed his Verified Shareholder Derivative Complaint [Dkt. No. 1].  On September 8, 2011, the second action commenced when Plaintiff James Clem filed his Verified Shareholder Derivative Complaint [Dkt. No. 1 in Case No. 5:11-cv-997-F].

[3] *In re Chesapeake S'holders Derivative Litig.*, Nos. CJ-2009-2870, CJ-2009-3983 (Dist. Ct. of Ok. Cnty., OK).

Proposed Settlement, thoroughly reviewed the terms thereof, and concluded the value of the released claims far exceeded the benefits Chesapeake would receive. ¶136.  Original Plaintiffs proceeded to protect the Company's claims, first seeking expedited discovery from defendants in this Court.  ¶137.  Defendants, however, convinced the Court to stay the Consolidated Action, forcing Original Plaintiffs to seek discovery in State Court in connection with their objections to the settlement.  *Id.*  The parties to the State Court action opposed Original Plaintiffs' effort to engage in discovery and argued the Proposed Settlement should be approved – including a $3.75 million fee for the state plaintiffs' attorneys – on the basis of the record before the court.  ¶140.  It appears defendants' efforts to oppose any and all confirmatory discovery was also motivated by a desire to keep information relating to defendant McClendon's loans secret, as such information may have come to light through the confirmatory discovery process.[4]  ¶142.

Co-Lead Counsel appeared at the final approval hearing and argued against the State Court granting final approval of the Proposed Settlement.  Razzouk Decl., ¶3.  On January 30, 2012, the State Court issued a final order overruling Original Plaintiffs' objections and approving the Proposed Settlement.  On February 29, 2012, Original Plaintiffs timely appealed the State Court's final approval order through a Petition in Error to the Supreme Court of Oklahoma, Case No. 110426.  ¶141.

---

[4] For example, if Original Plaintiffs had been permitted to explore the feasibility of transferring the FWPP interests defendant McClendon acquired via the 2008 "incentive award" to the Company, Original Plaintiffs almost certainly would have discovered that defendant McClendon has used those interests as collateral for loans to continue participating in the FWPP.

On February 7, 2012, the Court, per the parties' agreement, extended the time for all defendants to respond to the Original Plaintiffs' initial complaint to March 6, 2012 [Dkt. No. 40]. On March 6, 2012, the parties filed a Joint Application to Stay All Proceedings that requested the Court stay all proceedings until 30 days after the Supreme Court of Oklahoma resolves Original Plaintiffs' appeal [Dkt. No. 42]. This Joint Application was granted by the Court's March 14, 2012 Order, and the Consolidated Action has been stayed while Original Plaintiffs have been actively trying to protect the Company's claims [Dkt. No. 43].

     **B.    New Allegations Come to Light That Support and Add More Teeth to Original Plaintiffs' 2008 Claims**

On the morning of April 18, 2012, Chesapeake shareholders awoke to a Reuters exposé revealing that defendant McClendon had taken personal loans estimated at $1.1 billion from lenders, at least one of which received preferred shares of Chesapeake in separate financing transactions. ¶148. Unfortunately, this news was just the beginning of a string of revelations about defendant McClendon's conflicted interests. ¶¶171-77.

As detailed more fully in the proposed Amended Complaint, Reuters revealed that defendant McClendon has engaged in a complicated series of financial transactions whereby he pledged his interests in the FWPP as collateral for loans obtained from private equity firms. ¶¶5-6. He then used proceeds from the loan to pay for costs associated with his participation in the FWPP. ¶5. By structuring his finances in this way, defendant McClendon has created a situation where at any moment he could be

forced to choose between his own personal wealth and the well-being of Chesapeake and its shareholders. ¶18.

Indeed, defendant McClendon has demonstrated himself to be an executive looking out for his own self-interests rather than for the interests of Chesapeake and its shareholders, and recently it seems every day brings new revelations about the depth of his misconduct. Following the Reuters exposé, the Securities and Exchange Commission ("SEC") announced it was opening another investigation into defendant McClendon's participation in the FWPP (¶177), and S&P downgraded Chesapeake's debt citing corporate mismanagement as a primary reason. ¶197. The Board, in an effort to counter some of the negative publicity generated from McClendon's scandalous conduct, removed McClendon as its chairman and terminated his participation in the FWPP. ¶¶190-92.

Shortly thereafter, Reuters revealed that defendant McClendon ran a $200 million undisclosed hedge fund from 2004 to 2008 that traded in the same commodities Chesapeake produced. ¶¶199-200. Defendant McClendon ran this hedge fund, and spent considerable time doing so, while he was supposedly the full-time CEO of Chesapeake. ¶¶200-09. Indeed, it was likely the bad bets in 2008 that McClendon made in his hedge fund that lead to his need for a bailout in 2008 from Chesapeake, prompting the outrageous compensation package and the Consolidated Action. ¶¶208-11. In fact, despite the prohibition in defendant McClendon's employment agreement from engaging in any business independent from employment by the Company that required any substantial portion of his time during the time period, the Board not only failed to clamp

down on defendant McClendon's involvement in the fund, but also failed to disclose to shareholders any material facts relating thereto.   ¶¶208-19.   The revelation of these hedging activities and the complete conflict of interest created by it has sparked calls from at least one U.S. senator for a Department of Justice investigation and exposes Chesapeake to significant harm.  ¶196.

While shocking, the new revelations further validate Original Plaintiffs' ongoing struggle on behalf of the Company to shed light on the Board's decision to bailout McClendon in 2008, and essentially do so again in connection with the State Court settlement.

### C.      Several 2012 Actions Are Filed

After Reuters published its initial investigative report, at least eleven new cases have been filed alleging primarily derivative claims on behalf of Chesapeake against its Board.[5]  The related shareholder derivative actions that have been filed are as follows:

| Case Caption | Case Number | Date Filed |
|---|---|---|
| *Deborah G. Mallow IRA SEP Invest. Plan v. McClendon, et al.* | 5:12-cv-436-M | April 19, 2012 |
| *Snyder v. McClendon, et al.,* | 5:12-cv-437-M | April 20, 2012 |
| *Leonard v. McClendon, et al.,* | 5:12-cv-479-M | April 30, 2012 |
| *Dolezal Family Ltd. P'ship v. McClendon, et al.,* | 5:12-cv-477-M | April 30, 2012 |
| *Shocat v. McClendon, et al.,* | 5:12-cv-488-M | May 1, 2012 |
| *David A. Kroll Inc. Emps.' Profit-Sharing Plan* | 5:12-cv-493-M | May 2, 2012 |

---

[5] Further, on April 26, 2012, Plaintiffs Dvora and Steven S. Weinstein filed a class action Complaint for Violations of Federal Securities Laws, Case No. 5:12-cv-465-W (W.D. Okla.), alleging federal securities fraud violations under SEC Rule 10b-5 and Section 20(a) of the Securities and Exchange Act of 1934 ("Securities Class Action").  This action, however, involves different claims, legal standards, and questions of law than the derivative actions, and thus, the class action is generally ill-suited for consolidation with the derivative actions.

| *and Trust v. McClendon, et al.* | | |
|---|---|---|
| *Robaczynski v. McClendon, et al.* | 5:12-cv-501-M | May 3, 2012 |
| *Spiegel v. McClendon, et al.* | 5:12-cv-502-M | May 3, 2012 |
| *Rosengarten v. McClendon, et al.* | 5:12-cv-505-M | May 3, 2012 |
| *Alberts v. McClendon, et al.* | 5:12-cv-545-M | May 11, 2012 |
| *Gerber v. McClendon, et al.* | 5:12-cv-584-D | May 21, 2012 |

Each of these actions (collectively, the "2012 Actions") allege claims that, although distinct from Original Plaintiffs' 2008 claims (the "2008 Claims"), are based largely on the same legal principles and facts that parallel the wrongdoing providing the basis of the 2008 claims.

Several of these plaintiffs have also filed motions for consolidation and leadership:

• The Dolezal Family Limited Partnership ("Dolezal") filed the first motion for consolidation and leadership on April 30, 2012 [5:12-cv-477-M, Dkt. No. 7]. Amazingly, the motion was filed even before the complaint in the action. *See* Dolezal docket. The motion for consolidation and leadership, however, was struck for not being "docketed correctly" and for containing blank pages. It was re-filed the following day and is currently pending before this Court.

• Deborah G. Mallow IRA SEP Investment Plain ("Mallow") next filed a cross-motion for consolidation and leadership and an opposition to the Dolezal motion on May 3, 2012, on behalf of themselves and plaintiffs Leonard and Snyder [5:12-cv-436-M, Dkt. No. 15]. On May 14, 2012, they also filed a preliminary injunction and motion for expedited discovery that was stricken for not having a certificate of service and re-filed the following day. The Mallow cross-motion for consolidation and leadership is also currently pending before this Court.

• Plaintiff Shochat also filed a cross-motion for consolidation and leadership as well as an opposition to other two pending motions for consolidation and leadership on May 9, 2012 [5:12-cv-488-M, Dkt. No. 7].

• On May 16, 2012, plaintiff Mallow filed a response in support of their earlier cross-motion for consolidation and leadership and an opposition to the motion filed by plaintiff Shochat, this time on behalf of themselves and plaintiffs Snyder, Dolezal, Leonard, David A. Kroll, Inc. Employees' Profit Sharing Plan and Trust, and Spiegel [5:12-cv-436-M, Dkt. No. 19].

Original Plaintiffs now file this response in opposition to these motions, and propose to the Court a simpler means to consolidate these actions and provide for the most efficient and effective means to litigate the new derivative claims in the best interests of the Company.

## III.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

It goes without saying the 2012 Actions should be consolidated.  Consolidation of the 2012 Actions is appropriate because they arise from similar allegations against similar defendants involving common questions of law and fact.  Fed. R. Civ. P. 42(a).

The Court has discretion on whether to consolidate 2012 Actions for any or all purposes (including trial) to the extent the actions involve a common question of law or fact.  Fed. R. Civ. P. 42(a); *Skirvin v. Mesta*, 141 F.2d 668, 672 (10th Cir. 1944) ("The consolidation of actions for trial which appear to be of like nature and concern themselves with the same or similar questions rests within the sound discretion of the trial court."); *Blagg v. Line*, 09-CV-0703-CVE-FHM, 2012 WL 90439, at *1 (N.D. Okla. Jan. 11, 2012) ("A district court has the discretion to consolidate separate actions for trial if the cases involve a common issue of law or fact.").  Moreover, "[c]onsolidation is particularly important in shareholder derivative litigation, where stockholders sue on behalf of the corporation they own, not in their own right."  *In re Green Mountain Coffee Roasters, Inc., Derivative Litig.*, No. 2:10-cv-233, 2012 WL 1493823, at *1 (D. Vt. Apr. 27, 2012) (consolidating later filed derivative cases into consolidated action where later-filed derivative cases addressed "different time periods" but involved "common pattern" of factual allegations).  And explained herein, Original Plaintiffs more than meet their

burden of showing "that judicial economy is not outweighed by the possibility of delay or prejudice to the opposing party." *Blagg*, 2012 WL 90439, at *1.  Indeed, consolidation of the 2012 Actions with the Consolidated Action offers the cleanest, most efficient way to prosecute the pending derivative claims and at the same time help ensure consistent results.

In light of these guiding – if not governing – principles, Original Plaintiffs believe that the proper course is to consolidate the 2012 Actions with their Consolidated Action. Indeed, when recently confronted with an almost identical situation, Judge William K. Sessions III of the U.S. District Court of the District of Vermont consolidated cases involving different claims because they fit within an overall pattern of wrongdoing. *Green Mountain*, 2012 WL 1493823, at *1.  In *Green Mountain*, two related shareholder derivative actions were filed and then consolidated with a leadership structure put in place by the court.  *Id.*  Shortly after consolidation, the actions were stayed pending resolution of motions to dismiss filed in a related securities fraud lawsuit.  *Id.*  Over a year after the consolidation, while the action was still stayed, two additional shareholder derivative suits were filed alleging claims based on events that occurred after the original actions had been filed.  *Id.*  Just as the case here, the plaintiffs of the stayed, consolidated actions filed a notice of the new actions pursuant to the consolidation order to notify the court of the new actions and consolidate all of the actions under the order.  *Id.*; *see* Notice of Related Cases [Dkt. No. 47].  Judge Sessions ordered that all the cases be consolidated pursuant to the court's original consolidation order.  Judge Sessions explained that "consolidation is particularly important in shareholder derivative litigation" and that if

courts allowed derivative actions to "proliferate uncoordinated, [t]he cost of defending these multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought.'"[6] *Green Mountain*, 2012 WL 1493823, at *1. The court determined that, while the "complaints concern different time periods, there is a *'common pattern'* to the factual allegations" and to the extent the claims differed. *Id*. The court noted that "'the filing of a consolidated complaint' permits the parties to 'resolve remaining issues concerning the differing class periods.'" Because the legal claims and facts were fundamentally similar, Judge Sessions granted consolidation under the prior consolidation order. *Id*.

Green Mountain is strikingly similar to the case at bar, such that Original Plaintiffs believe the Court should follow the same course of action and consolidate the 2012 Actions with the Consolidated Action pursuant to the Court's December 23 Order. Pursuant to that order, this Court consolidated the two original shareholder derivative actions brought on behalf of Chesapeake by plaintiffs Arnold and Clem. In a nutshell, the Consolidated Action concerns whether Chesapeake's Board breached its fiduciary duties by bailing out defendant McClendon after he engaged in reckless transactions using his Chesapeake stock as collateral, ultimately ending with him being forced to dump nearly all of his Chesapeake stock and thereby tanking the Company's share price. The Consolidated Action was stayed while Original Plaintiffs actively sought to protect the Company's 2008 Claims in the Oklahoma Supreme Court. Since then, Reuters first

[6] Here, as throughout, all emphasis is deemed added and citations and footnotes are omitted unless otherwise noted.

broke what has become a steady stream of revelations regarding various financing transactions that defendant McClendon has recklessly engaged in while the Board willfully ignores the dangers presented by defendant McClendon's activities.  Now several new shareholder derivative actions have been filed asserting claims based on these revelations (the "2012 Claims"), which are in essence a continuation of the Board's *modus operandi* of allowing (if not rewarding) reckless transactions by defendant McClendon despite the peril in which he places the Company to potentially make a cheap buck for himself.  As was the case in *Green Mountain*, Original Plaintiffs have drafted and, if permitted, will file the proposed Amended Complaint, which will permit the parties to resolve the issues that have arisen since the April 18, 2012 Reuters article.  *Id.*

Tellingly, just about each and every new plaintiff implicitly or explicitly recognizes in their pleadings the synergistic relationship between the wrongdoing arising from defendant McClendon's 2008 compensation package and the new 2012 Claims. Razzouk Decl., ¶8.

Because the claims asserted in the 2012 Actions and the Consolidated Action involve the same general pattern of serial misconduct by the Individual Defendants, it would be more effective and efficient to litigate the two sets of claims as closely as possible.  When considered holistically, the 2008 Claims and the 2012 Claims provide the Court or a jury with a far more compelling case than if the claims were litigated separately.  Both sets of claims follow similar patterns of defendant McClendon engaging in reckless transactions for his own personal gain to the potential detriment of the Company, while the Board has time and time again looked the other way or facilitated the

dangerous practices that expose Chesapeake to an unparalleled level of harm.   One example of the synergy between the two claims is the fact that, in light of the many conflicts of interest arising from defendant McClendon's participation in the FWPP, Original Plaintiffs now know the FWPP did not and does not align defendant McClendon's interests with the Company's interests, contrary to what the Individual Defendants have repeatedly stated to shareholders since the FWPP was put to a shareholder vote in 2005.   Indeed, the "alignment of the interests" the FWPP created was one of the primary justifications for the Board granting defendant McClendon the $75 million "incentive award" to participate in the FWPP for free as part of his 2008 bailout package – the recent revelations further prove that this justification was a lie.   Further, it has been recently unearthed that McClendon was also engaging in clandestine hedging activities that the Board helped facilitate through amendments to his employment agreement.   Notably, these hedging activities seemed to have abruptly stopped around the time defendant McClendon needed his 2008 bailout.

     With the factual similarities come efficiencies. The law for most of the claims asserted should be substantially similar, and in some instances identical.   The 2008 claims and the 2012 claims, for example, both substantially involve breaches of fiduciary duty by the Board.   Consideration of the issues together could help ensure consistent results.  Discovery between the 2008 claims and 2012 claims would substantially overlap – meaning that even if prosecution of the 2008 claims may be delayed, discovery relating to the 2012 claims could jumpstart litigation of the 2008 claims, conserving resources of all parties and the Court in the process.   Further, Original Plaintiffs' proposed Amended

Complaint (or a substantial equivalent thereof), could be filed with little delay once the Court grants Original Plaintiffs permission to file it.  Due to the hard work of Co-Lead Counsel, the proposed Amended Complaint can serve well as the consolidated complaint for the 2012 Actions, meaning litigation of the 2012 claims could start much sooner than if the Court had to wait for new counsel to start work on a consolidated complaint.

Because of the overlap of certain factual and legal issues asserted in the 2012 Actions with those asserted in the proposed Amended Complaint, hearing all the matters in a single, consolidated action would preserve judicial and party resources, avoid inconsistent rulings, and greatly facilitate the administration of justice.  *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624-25 (D. Del. 2011); *Green Mountain*, 2012 WL 1493823, at *1. As such, all of the 2012 Actions should be consolidated under the December 23 Order.

## IV.    THIS COURT SHOULD REAFFIRM ITS APPOINTMENT OF ROBBINS UMEDA AND HOLZER AS CO-LEAD COUNSEL

As discussed above, the law firms of Robbins Umeda and Holzer have already been appointed as Co-Lead Counsel by the Court in its December 23 Order.  Although not necessary in light of the order, an assessment of Co-Lead Counsel should confirm that they are the best choice of counsel to lead the consolidated derivative litigation on behalf of Chesapeake.

As recognized by the other counsel, in deciding upon appropriate lead counsel in a derivative action, courts consider a number of factors, including: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel."  *Moradi v. Adelson*, No. 11-CV-490-GMN-RJJ, 2011 WL 5025155, at *2

(D. Nev. Oct. 20, 2011). Additionally, courts often take into account "(i) counsel's work to identify or investigate potential causes of action; (ii) counsel's experience in overseeing complex litigation; (iii) counsel's knowledge of relevant principles; and (iv) the resources counsel has available to zealously pursue the lawsuit." *In re Life Partners Holdings, Inc. S'holder Derivative Litig.*, Case No. DR-11-CV-43, slip op. at 3 (W.D. Tex. May 9, 2012) ("*Life Partners*") attached as Ex. 1 to the Declaration of Jay N. Razzouk in Support of Plaintiffs Arnold and Clem's Consolidated Response In Opposition to Motions and Cross Motions to Consolidate and Appoint Lead ("Razzouk Decl."), filed concurrently herewith (citing *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009)).

Where a leadership structure is already in place, some courts have been hesitant to appoint numerous co-lead counsel unless there is a showing that the appointment "would materially enhance the quality of advocacy on behalf of the plaintiffs." *Life Partners* at 4.[7] Indeed, "'[t]he potential for duplicative services, leadership discovery, and increased attorney's fees militate against the appointment of multiple law firms, [] especially in cases where one law firm has the proven ability to adequately manage and litigate securities class actions.'" *Life Partners* at 4 (citing *In re Jones Soda Co. Secs. Litig.*, No. C07-1366RSL, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008)). This Court's prior appointment of the lead structure has already proven effective. As detailed below, and in

---

[7] On similar grounds, some courts also deny intervention by additional plaintiffs represented by additional counsel. *See, e.g.*, *In re Ambac Fin. Group, Inc. Derivative Litig.*, 257 F.R.D. 390, 394 (S.D.N.Y. 2009).

the Razzouk Decl., Robbins Umeda and Holzer have worked diligently to pursue the best interests of the Company in the pending litigation, despite the delays that have been caused.  Moreover, Original Plaintiffs and Co-Lead Counsel in this Consolidated Action have already demonstrated a firm commitment to vigorously and effectively prosecute this matter.   Indeed, current Co-Lead Counsel and Original Plaintiffs are not just adequate, but are the ***best plaintiffs and counsel to prosecute this case***.  The leadership structure need not be altered.

### A.    Original Plaintiffs Have By Far Conducted the Most Thorough Investigation as Reflected in Their Unrivaled Complaint

Original Plaintiffs have a long record of seeking to hold Chesapeake's Board accountable for the actions that have caused significant harm to the Company and have litigated the current action both efficiently and effectively, being able to move deftly when necessary and having the patience to meticulously investigate any potential causes of action.  Co-Lead Counsel has by far conducted the most thorough investigation into the facts that have come to light.  Unlike the newly-arrived counsel, Co-Lead Counsel was willing to devote the time and resources to properly investigate and analyze the facts giving rise to the 2012 Claims before filing (or proposing) a complaint alleging those claims.  Despite the blatant rush to the courthouse by the other shareholders, as news relevant to the 2012 Claims continued to break, Co-Lead Counsel repeatedly decided that it was in the Company's best interests to hold off on submitting the Amended Complaint so that they could thoroughly investigate and analyze the new revelations.  Razzouk Decl., ¶5.

All of the other 2012 Actions' complaints are missing key facts and analysis that may be critical to securing recovery for the Company.  These key facts omitted from most (if not all) of the other complaints but present in Original Plaintiffs' proposed Amended Complaint, include, but are not limited to, detailed allegations regarding: (i) the pending IRS investigation; (ii) the Board's rushed defense of defendant McClendon's financial transaction without conducting any investigation; and (iii) continuing fall out from the news of defendant McClendon's wrongdoing.  Razzouk, Decl., ¶9

Further distinguishing Co-Lead Counsel's hard work, Co-Lead Counsel include in their proposed Amended Complaint allegations reflecting original analysis and investigative work that pre-dates revelations by the media.  For example, before Reuters first published an article on the subject on May 8, 2012, Original Plaintiffs allege that the Board agreed to various amendments to defendant McClendon's employment agreement to enable him to engage in the hedging activities with less risk of breaching the terms of his employment.  Razzouk Decl., ¶8.  Co-Lead Counsel's investigation has also included a public records search looking for documents relating to defendant McClendon's financing transactions relating to the FWPP.  *See, e.g.*, Razzouk Decl., ¶8.  No other counsel seems to have committed the resources to engage in such investigative work.  Co-Lead Counsel's vigorous investigation, reflected in their robust Amended Complaint, demonstrates that they have the ability to lead this complex litigation.  Original Plaintiffs and Co-Lead Counsel's demonstrated and persistent refusal to abandon the Company's interests justifies a continued leading role in litigating claims on behalf of the Company.

**B.      Co-Lead Counsel Have Substantial Expertise in Litigating Shareholder Derivative Actions**

As further described below, Co-Lead Counsel have the necessary qualifications to lead the derivative litigation on behalf of Chesapeake.

Robbins Umeda is an experienced shareholder derivative litigation law firm.  The firm has played a substantial role in some of the most successful shareholder derivative actions in the United States.   *See* Firm Resume of Robbins Umeda, attached as to the Razzouk Decl. as Ex. 2 at 2-3 *(see, e.g.*, *In re Am. Int'l Group, Inc. Derivative Litig*., No. 04 Civ. 8406 (DLC) (S.D.N.Y. Mar. 14, 2011) (as lead counsel in consolidated federal action in a global settlement of derivative claims including for breaches of fiduciary, helping secure a $90 million payment to the company – one of the largest monetary recoveries in the history of shareholder derivative actions); *In re Cardinal Health Derivative Litigation*, No. 02-CVG-11-639 (as lead counsel following years of litigation and extensive discovery, securing $70 million payment to the company and expansive corporate governance); *In re OM Group, Inc. Derivative Litigation*, No. 1:03-cv-0020 (securing as sole lead counsel, among other things, $29 million payment to the company, the termination of the company's long term CEO and the addition of two shareholder nominated directors).  Courts have recognized the high quality of Robbins Umeda's representation of shareholders and class members in this sophisticated type of litigation. Razzouk Decl., Ex. 2.

Moreover, the Robbins Umeda attorneys who will have primary responsibility for prosecuting the action are exceptionally well qualified.  George Aguilar, a Robbins

Umeda partner who will be leading the firm's work in this case has vast experience in derivative litigation and substantial trial experience prosecuting complex white collar criminal cases, such as corporate, securities, bank, investor, tax foreign currency, and bankruptcy fraud, bank bribery, and money laundering.  Razzouk Decl., Ex. 2 at 7.

Similarly, Holzer has a demonstrated track record of successfully litigating shareholder derivative cases.  *See generally* Razzouk Decl, Ex. 3.  Michael Fistel, Jr., the Holzer partner who would lead the firm's efforts in this action, has personally participated in shareholder derivative suits that achieved results on behalf of some of the largest companies in the world, including Coca-Cola Co. (where Holzer served as lead counsel) and Home Depot Inc. (where Holzer served as co-lead counsel in the federal derivative action).  Holzer, and Mr. Fistel specifically, also served as co-lead counsel in the successful prosecution of derivative claims against Sequenom, Inc. and Neurometrix, Inc., and, to date, have diligently and competently served as Co-Lead Counsel in this action on behalf of Chesapeake.  Further, the firm is currently appointed as co-lead counsel in a number of noteworthy shareholder derivative actions pending in courts across the country, including cases on behalf of WebMD Health Corp. and Synovus Financial Corp.  As its firm resume demonstrates, Holzer has dedicated its practice to enforcing shareholders' rights, and its experience prosecuting derivative actions makes it

well qualified to continue serving as Co-Lead counsel in this action.[8]  *See* Firm Resume of Holzer Holzer & Fistel, LLC, attached as Ex. 3 to Razzouk Decl.

Indeed, Co-Lead Counsel has already brought, and will continue to bring, this substantive expertise in derivative litigation to this action to the benefit of Chesapeake and its shareholders.  Robbins Umeda and Holzer's substantial knowledge and high level of experience is demonstrated by the particularized and comprehensive proposed Amended Complaint that they meticulously prepared.  Their experience and sound judgment is reflected in their thoughtful approach to litigation that is aimed at avoiding unnecessary or wasteful briefing.  Instead of rushing to file ill-conceived motions that provide no net benefit to the Company, Co-Lead Counsel has been acting carefully and methodically to prosecute the new claims in the manner that would be in the Company's best interests.

Co-Lead Counsel disagrees with the litigation tactics by the other counsel and believes they are not in the best interests of the Company.  The Mallow plaintiffs, for example, allege a vague direct claim for declaratory relief under Section 14A.  *See, e.g.*, Mallow Complaint [No. 5:12-cv-436-M, Dkt. No. 1], Count I.  It is unclear how this claim would benefit the Company.  Perhaps the purpose of this otherwise meaningless claim for declaratory relief could be explained by the motion for preliminary injunction. *See generally* Mallow Motion for Preliminary Injunction [No. 5:12-cv-436-M, Dkt. No.

---

[8] Holzer and its attorneys also have been responsible for prosecuting claims under the federal securities and R.I.C.O laws that have resulted in the recovery of millions of dollar for shareholders.

18]. But this motion appears rushed and poorly conceived. Even before the Mallow plaintiffs filed their Motion for Preliminary Injunction, Co-Lead Counsel explored the possibility of such course of action and concluded that seeking to enjoin the annual meeting would not be in the Company's best interest.[9]  Razzouk Decl., ¶6.

Meanwhile, counsel for plaintiff Shochat rushed to file a motion to intervene in this Consolidated Action that is unnecessary and is premised on several misunderstandings, including the applicable law.  Counsel for plaintiff Shochat, for example, misstates in the motion to intervene the applicable law for excusing demand. Aside from the fact that Oklahoma law, as opposed to Delaware law that Shochat cites, governs this case because Chesapeake is incorporated in Oklahoma, Schacht in essence argues that making a demand on the Board of a company forever disqualifies a shareholder who made the demand from later arguing that demand is futile as to matters that fall outside the scope of the demand.  But demand futility is a claim-by-claim, transaction-by-transaction analysis. *Beam v. Stewart*, 833 A.2d 961, 977 & n.48 (Del. Ch. 2003) (demand futility analysis "is conducted on claim-by-claim basis").  To the contrary, and as would seem to be contemplated by the plain wording of the applicable Oklahoma statute, the Board's egregious mishandling of Original Plaintiffs' demands relating to the 2008 Claims offer a unique and compelling argument that Original Plaintiffs should be excused from making a demand relating to the 2012 Claims (which

---

[9] As reflected in Original Plaintiffs' proposed Amended Complaint, shareholders may seek on behalf of the Company damages to the extent compensation to the Individual Defendants is approved by shareholders due to improper disclosures or omissions.

involve substantially the same overall pattern of misconduct).  As will be explained in separate briefing by Original Plaintiffs, Shochat also concocts controversy by claiming that Original Plaintiffs' efforts to litigate the 2008 and 2012 claims together threatens the release of the 2012 Claims pursuant to the doctrine of *res judicata*.  Even defendants essentially recognize that the 2012 Claims would not be extinguished by the State Court settlement if its approval is affirmed on appeal.  *See* Defendants' Response to Plaintiffs' Motion to Lift Stay [Dkt. No. 53] at 7-8.  Moreover, counsel for Shocat, in their motion for leadership, waste time overstating the necessity of appointing lead plaintiff.  *See* Plaintiff Mallow's Cross-Motion and Opposition [No. 5:12-cv-436-M, Dkt. No. 19] at 3-5.[10]

In addition to its substantive expertise, Robbins Umeda and Holzer possess the financial resources and the demonstrated willingness to invest such resources necessary to litigate this complex derivative matter vigorously and effectively on behalf of Chesapeake and its shareholders.

---

[10] If, however, this Court feels compelled to appoint lead plaintiffs, it should be Original Plaintiffs as they have long sought to hold the Board and defendant McClendon accountable, and were the only two shareholders to oppose the facially flawed State Court settlement.  It is their appeal that has preserved the valuable claims relating to the 2008 compensation package – an ongoing effort that has been further justified by the recent revelations forming the factual basis of the new claims.  Further, Original Plaintiffs are the only ones to plead the specific dates of stock purchases, verifying their ownership in the Company and proper standing to pursue this derivative action.

### C.      Co-Lead Counsel Is in the Best Position to Effectively and Efficiently Lead the Litigation

As discussed throughout, Original Plaintiffs have a proven record of seeking to hold Chesapeake's Board accountable for the actions that have caused significant harm to the Company.  Now Original Plaintiffs and Co-Lead Counsel offer what they believe to be the best plan to move the derivative litigation forward in an efficient and effective manner.  Co-Lead Counsel have acted carefully and methodically to prosecute the new claims in the manner they believe would be in the Company's best interests.  Original Plaintiffs are not rushing to file half-backed motions that would bog down the Court and the Company in unnecessary briefing.  Yet, as the Court has seen from Co-Lead Counsel's work relating to the proposed settlement, Original Plaintiffs are able to move with skill and alacrity as necessary to act in the Company's best interests.

## V.      CONCLUSION

For the foregoing reasons, the Court should deny the various motions for leadership and consolidation and consolidate the 2012 Actions with the Consolidated Action pursuant to its previous December 23 Order.

DATED:  May 22, 2012                    ROBBINS UMEDA LLP

                                        *s/ Jay N. Razzouk*
                                        JAY N. RAZZOUK

                                        BRIAN J. ROBBINS
                                        GEORGE C. AGUILAR*
                                        JAY N. RAZZOUK*
                                        LAUREN N. OCHENDUSZKO
                                        600 B Street, Suite 1900
                                        San Diego, CA 92101
                                        Telephone: (619) 525-3990
                                        Facsimile: (619) 525-3991

                                        HOLZER HOLZER & FISTEL, LLC

MICHAEL I. FISTEL, JR.*
MARSHALL P. DEES*
WILL STONE
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*admitted to appear *pro hac vice*

*Co-Lead Counsel for Plaintiffs in Consolidated
Action No. 5:11-cv-985-M*

HOLLOWAY, BETHEA &
   OSENBAUGH, PLLC
KENYATTA BETHEA
3035 N.W. 63RD, Suite 102N
Oklahoma City, OK 73116
Telephone: (405) 246-0600
Facsimile: (405) 810-4080

*Liaison Counsel for Plaintiffs in Consolidated
Action No. 5:11-cv-985-M*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Kenyatta R. Bethea
HOLLOWAY, BETHEA &
OSENBAUGH
3035 N.W. 63rd, Suite 102N
Oklahoma City, OK 73116

Michael I. Fistel, Jr.
Marshall P. Dees
HOLZER HOLZER & FISTEL, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338

James R. Webb
Spencer F. Smith
MCAFEE & TAFT, A.P.C.
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102

Don S. Strong
G. Stephen Martin
STRONG, MARTIN &
   ASSOCIATES, PLLC
2700 First National Center
120 North Robinson Avenue
Oklahoma City, OK 73102

Lewis S. Kahn
Albert M. Myers
Melinda A. Nicholson
KAHN SWICK & FOTI, LLC
206 Covington Street
Madison, LA 70447

Steven W. Crow
LAW OFFICES OF DELLUOMO
   & CROW
5617 N. Classen Boulevard
Oklahoma City, OK 73118

I further certify that I served the attached document by U.S. Mail on the following:

John Halebian
LOVELL STEWART HALEBIAN LLP
Midtown Office
317 Madison Avenue, 21st Floor
New York, NY 10017

Nancy Kaboolian
Stephanie Amin-Giwner
ABBEY SPANIER RODD
   & ABRAMS, LLP
212 East 39th Street
New York, NY 10016

Robert I. Harwood
Matthew M. Houston
HARWOOD FEFFER LLP

Richard A. Lockridge
Gregg M. Fishbein
LOCKRIDGE GRINDAL NAUEN P.L.L.P.

488 Madison Avenue
New York, NY 10022

Roy L. Jacobs
ROY JACOBS & ASSOCIATES
60 East 42nd Street, 46th Floor
New York, NY 10165

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG
LLP
1925 Century Park East, Ste 2100
Los Angeles, CA 90067

Darren B. Derryberry
DERRYBERRY & NAIFEH, LLP
4800 North Lincoln Boulevard
Oklahoma City, OK 73105

Edward W. Gale
Thomas C. Atmore
LEONARD, O'BRIEN, SPENCER,
   GALE & SAYRE, LTD.
100 South 5th Street, Suite 2500
Minneapolis, MN 55402

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Brian Murray
MURRAY FRANK, LLP
275 Madison Avenue, Suite 801
New York, NY 10016

Raymond A. Bragar
Lawrence P. Eagel
Jeffrey H. Squire
Justin Kuehn
BRAGAR WEXLER EAGEL
   & SQUIRE, P.C.
885 Third Avenue, Suite 3040
New York, NY 10022

Curtis V. Trinko
LAW OFFICES OF CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY 10036

David B. Kahn
Mark E. King
DAVID B. KAHN & ASSOCIATES, LTD.
One Northfield Plaza, Suite 214
Northfield, IL 60093

*s/ Jay N. Razzouk*
JAY N. RAZZOUK

735606